IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVA CHEMICALS CORPORATION (CANADA), and NOVA CHEMICALS INC. (DELAWARE),<br><br>             Plaintiff,<br><br>    v.<br><br>THE DOW CHEMICAL COMPANY,<br><br>             Defendant. | C.A. No. 13-1601 (LPS) |

### DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS, ATTORNEYS' FEES, AND COSTS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com

OF COUNSEL:

Anton R. Valukas
Harry J. Roper
Aaron A. Barlow
Paul D. Margolis
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Plaintiff*
*The  Dow Chemical Company*

Kathleen M. Sullivan
Raymond N. Nimrod
William B. Adams
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010

September 5, 2014

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

     A.     Dow's Successful Patent Infringement Lawsuit Against Nova ..............................3

     B.     Nova's Frivolous Complaint For Equitable Relief And Dow's First Motion To Dismiss ..........................................................................................4

     C.     Nova's Frivolous First Amended Complaint ...........................................................5

     D.     Dow's Second Motion To Dismiss ..........................................................................7

     E.     Nova's Bad Faith Arguments At The July 29, 2014 Hearing ..................................8

     F.     The Court's Dismissal Of Nova's Action ..............................................................11

ARGUMENT .........................................................................................................................11

I.      THE COURT SHOULD ORDER NOVA's COUNSEL TO PAY DOW'S ATTORNEYS' FEES AND COSTS AS A SANCTION UNDER 28 U.S.C. § 1927......................................................................................................................13

     A.     Nova's Counsel Multiplied Proceedings And Increased Dow's Costs .................13

     B.     Nova's Counsel Acted Unreasonably, Vexatiously, And In Willful Bad Faith ......................................................................................................................14

II.     THE COURT SHOULD ORDER NOVA TO PAY DOW'S ATTORNEYS' FEES UNDER 35 U.S.C. § 285........................................................................................17

III.    THE COURT SHOULD INVOKE ITS INHERENT AUTHORITY TO SANCTION NOVA AND ITS COUNSEL FOR THEIR LITIGATION MISCONDUCT ........................................................................................................20

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker Indus., Inc. v. Cerberus Ltd.*,
    764 F.2d 204 (3d Cir. 1985)................................................................................14

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989).........................................................................17

*Campbell v. Spectrum Automation Co.*,
    601 F.2d 246 (6th Cir. 1979) ............................................................................18

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)............................................................................................20

*Classen Immunotherapies, Inc. v. Biogen Idec*,
    2014 WL 2069653 (D. Md. May 14, 2014).......................................................18

*Cleveland Demolition Co. v. Azcon Scrap Corp.*,
    827 F.2d 984 (4th Cir. 1987) .........................................................................1, 12

*Dow Chem. Co. v. Nova Chems.Corp. (Canada)*,
    726 F. Supp. 2d 459 (D. Del. 2010)....................................................................3

*Enmon v. Prospect Capital Corp.*,
    675 F.3d 138 (2d Cir. 2012)..........................................................................13,20

*Ferguson v. Valero Energy Corp.*,
    454 F. App'x 109 (3d Cir. 2011) .......................................................................20

*Gilbreth Int'l Corp. v. Lionel Leisure, Inc.*,
    622 F. Supp. 478 (E.D. Pa. 1985) .....................................................................12

*Herring v. United States*,
    424 F.3d 384 (3d Cir. 2005)..............................................................................15

*In re Antonelli*,
    2012 WL 280722 (Bankr. D.N.J. Jan. 30, 2012) ..............................................14

*In re Elonex Phase II Power Mgmt. Litig.*,
    279 F. Supp. 2d 521 (D. Del. 2003)..................................................................13

*In re Kaiser Grp. Int'l, Inc.*,
    445 B.R. 361 (Bankr. D. Del. 2011) ..................................................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    278 F.3d 175 (3d Cir. 2002).................................................................................13, 14, 20

*In re Tutu Wells Contamination Litig.*,
    120 F.3d 368 (3d Cir. 1997)...............................................................................................12

*Interspiro USA, Inc. v. Figgie Int'l Inc.*,
    18 F.3d 927 (Fed. Cir. 1994).............................................................................................17

*Kilopass Tech. Inc. v. Sidense Corp.*,
    2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ..................................................................18

*Lewis v. Smith*,
    480 F. App'x 696 (3d Cir. 2012) .......................................................................................14

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
    2014 WL 2440867 (S.D.N.Y. May 30, 2014) ...................................................................18

*Maid of the Mist Corp. v. Alcatraz Media, LLC*,
    446 F. App'x 162 (11th Cir. 2011) ....................................................................................20

*Martin v. Brown*,
    63 F.3d 1252 (3d Cir. 1995)...............................................................................................12

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014).................................................................................................18, 19

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011) .............................................................................................15

*United States v. Beggerly*,
    524 U.S. 38 (1998)..................................................................................................... passim

## STATUTES

28 U.S.C. § 1927................................................................................................................. passim

35 U.S.C. § 285................................................................................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 11 .......................................................................................................................20

Fed. R. Civ. P. 12 ....................................................................................................................2, 16

Fed. R. Civ. P. 30(b)(6)................................................................................................................2

Fed. R. Civ. P. 60................................................................................................................. passim

iii

## **INTRODUCTION**

Defendant The Dow Chemical Company ("Dow") respectfully submits this opening brief in support of its motion for sanctions and an award of attorneys' fees against Plaintiffs Nova Chemicals Corporation (Canada) and Nova Chemicals Inc. (Delaware) (collectively, "Nova") and its counsel pursuant to 28 U.S.C. § 1927, 35 U.S.C. § 285, and the Court's inherent powers.

As the Court stated at the July 29 hearing, Nova's allegations were "about as serious [as] allegations in civil litigation can be." (D.I. 28 at 53:5-6.) Nova alleged "a conscious, conscientious, deliberate deception by Dow, by its in-house counsel, by its outside counsel, and by at least one of its witnesses, a conscious effort to defraud the District of Delaware, the Federal Circuit, [and] I suppose the Supreme Court as well…." (*Id.* at 53:7-11.) But as this Court concluded, Nova could not even adequately *allege* involvement by an officer of the Court, much less have the ability to *prove* such involvement. (*Id.* at 54:4-9.) Nevertheless, without the slightest basis or care, Nova falsely accused Dow's attorneys of conspiring to commit a fraud on the Court based on "information and belief." Nova's actions betray a calculated effort to use accusations of unethical conduct and perjury, with the apparent purpose of influencing settlement negotiations in related civil litigation. Such a ploy should not be countenanced. Nova and its attorneys should be sanctioned with sufficient severity to deter this sort of gamesmanship.

The Supreme Court has made clear that independent actions in equity for relief from prior judgments should rarely be brought, and may succeed only in the most extreme circumstances. *United States v. Beggerly*, 524 U.S. 38, 46-47 (1998). Where such a complaint fails, while leveling unwarranted attacks of ethical misconduct and perjury, sanctions are appropriate because "[a] complaint of this nature has a potentially devastating impact upon professional reputations." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir. 1987). Here, Nova had multiple chances to withdraw its inflammatory pleading, but insisted on

carrying on a frivolous case that accused Dow's attorneys of conspiring to defraud on the Court.

Nova and its counsel relied on conclusory allegations against Dow's attorneys based on "information and belief," and then—ignoring the duty of candor to the tribunal—tried to hide behind the Rule 12 pleading standard to prevent the Court from considering the trial record, even where it flatly contradicted Nova's allegations.  When Dow pointed out these failures, the only reasonable course for Nova was to acknowledge reality and dismiss its own case, but it never did so.  Rather, Nova and its counsel sought to survive the pleading stage at all costs, apparently to gain leverage in negotiations with Dow—despite knowing that their claims were baseless.

On standing, Nova and its counsel knew that the Contribution Agreement is unambiguous and that extrinsic evidence is irrelevant to its interpretation.  Thus, Nova and its counsel knew that Valenzuela's testimony could not justify reading the Agreement to effectuate a mass transfer of Dow's patents.  In fact, after forcing Dow to brief the issue three times, at oral argument Nova effectively *abandoned* any suggestion that the testimony had any relevance to the prior decisions that a patent is not transferred unless it appears on Schedule A.  (D.I. 28 at 26:4-6.)  But rather than giving up the entire standing argument, counsel made a *new* but equally meritless argument that a *2009* Schedule A controlled transfer of the patents-in-suit *in 2005*.  (*See id.* at 26:12-16.)  Nova's counsel then evaded the Court's direct questions about the document's creation date, even though Nova's amended complaint admitted that it was created in 2009.  (*Id*. at 49:15-25.)

On infringement, Nova and its counsel knew or should have known that Dr. Soares' "perhaps impossible" testimony in Canada could not possibly have been related to separating the HDF of Nova's polymers because, in that very testimony, Dr. Soares was clear that he *did* separate the HDF.  And Nova knew from its own Rule 30(b)(6) witness that Nova *itself* repeatedly separated the HDF on a routine basis.  Nova also had no basis to allege that Dow's attorneys knew that Dr. Soares' testimony was supposedly false.  Nova's allegations on the latter

point were particularly unfounded, as they depended entirely on a legally unsupportable inference that Dow's attorneys allegedly gained knowledge through properly withheld pre-litigation work-product testing having nothing to do with Dr. Soares. Any reasonable lawyer reviewing the record in the 05-737 Action should have concluded that there was no basis to attack the reputations of Dow's attorneys. Nova did anyway.

In pursuing this frivolous action, Nova and its counsel violated all norms of appropriate litigation conduct. They should be ordered to pay Dow's costs in litigating this action, under 28 U.S.C. § 1927, 35 U.S.C. § 285, and/or this Court's inherent authority to police its docket.

### STATEMENT OF FACTS

**A.    Dow's Successful Patent Infringement Lawsuit Against Nova**

Dow sued Nova for infringement in 2005, initiating this Court's case No. 05-cv-737 (the "05-737 Action"). Nova hired three prominent law firms (Finnegan Henderson, K&L Gates, and Potter Anderson) and mounted a scorched-earth defense: it contended that Dow's patents were invalid on more than twenty grounds, brought a 66-page antitrust counterclaim, filed numerous discovery motions, twice moved for summary judgment, and sought to exclude reams of evidence through *Daubert* motions and motions *in limine*. Its efforts largely failed, and Dow's case was tried to a jury in 2010. On June 15, 2010, the jury returned a verdict in Dow's favor.

Following the jury phase of trial, the Court held a bench trial on Dow's standing, an issue that turned on whether or not Dow had transferred ownership of the patents-in-suit to a subsidiary ("DGTI") in a 2002 Contribution Agreement. Dow argued that the Contribution Agreement unambiguously transferred only the rights to patents listed on a "Schedule A." *See Dow Chem. Co. v. Nova Chems.Corp. (Canada)*, 726 F. Supp. 2d 459, 461 (D. Del. 2010). Nova's position, in contrast, was that the Contribution Agreement should be interpreted to effectuate a mass transfer of *all* of Dow's patents (including the patents-in-suit) that were not

explicitly *excluded*.  *See id.*  The parties also disputed whether a document labeled "Schedule B Supplement" (which did not list the patents-in-suit) was evidence of the operative Schedule A in 2005.  *See id.*  The Court agreed with Dow's interpretation, ruling that the Contribution Agreement is unambiguous and that it does not transfer any patents to DGTI "unless and until the patents are explicitly listed on Schedule A."  *Id.* at 463.  Because the patents-in-suit were not listed on a Schedule A, Dow retained ownership and thus the right to sue. *Id.* at 463-64.

Nova appealed the Court's ruling on standing and the jury's liability findings to the Federal Circuit.  The Federal Circuit affirmed, agreeing with this Court that the Contribution Agreement was unambiguous and upholding the jury's finding that Dow's patents were valid and infringed by Nova's products.  458 F. App'x 910 (Fed. Cir. 2012).  The Supreme Court denied Nova's petition for a writ of *certiorari*.  133 S. Ct. 544 (Oct. 29, 2012).

### B.    Nova's Frivolous Complaint For Equitable Relief And Dow's First Motion To Dismiss

Unsatisfied with this result, Nova filed the instant action for equitable relief from the final judgment in the 05-737 Action, asserting that Dow had committed two frauds on the Court.

*First*, Nova contended that Dow had misrepresented its ownership of the patents-in-suit. Specifically, Nova alleged that a former Dow tax department employee, Edward Valenzuela, had testified in unrelated tax litigation in Louisiana that at the end of 2001 "'all' of Dow's patents were contributed to" DGTI (D.I. 1 at ¶¶ 40-41), and that this meant that Dow had "falsely argue[d] at trial and on appeal ... that the only Dow patents transferred to DGTI under the 2002 Contribution Agreement were those specifically enumerated on Schedule A" (*id*. ¶ 45).  Nova's original complaint did not allege that Valenzuela's testimony was relevant to the authentication of the "Schedule B Supplement."

*Second*, Nova contended that Dow's expert, Dr. João Soares, had falsely testified at trial

in the 05-737 Action that separating the HDF was "relatively easy," when he subsequently admitted in the Canadian proceeding that this separation was "perhaps impossible."  (*Id.* ¶ 58.)

Dow moved to dismiss on the grounds that Nova's complaint failed to plausibly allege a "grave miscarriage of justice" because it did not allege that Dow's attorneys had been involved in the purported fraud on the Court.  (D.I. 8 at 10-14.)  Dow further explained that Nova had not even plausibly alleged that Dr. Soares had made any false or misleading statement or that the alleged false statements were material to any infringement issue in the case.  (*Id.* at 15-16, 18-20.)  Dow explained that the alleged standing-related misconduct was also immaterial to the outcome:  Both this Court and the Court of Appeals had found the Contribution Agreement to be unambiguous.  Thus, Valenzuela's testimony was irrelevant extrinsic evidence.  (*Id.* at 14-18.)

### C.    Nova's Frivolous First Amended Complaint

Although Dow's motion to dismiss should have given Nova and its attorneys ample warning that its claims had no merit, Nova neither withdrew the action nor defended its initial pleading.  Instead, Nova filed an amended complaint accusing Dow's *attorneys* of fraud on the Court, fabrication of evidence, and subornation of perjury.  (D.I. 11.)

As to infringement, the amended complaint alleged that Dow's attorneys "knew, or should have known" that Dr. Soares had submitted false testimony, that they were involved in a "scheme to mislead the jury" (including by withholding information that "was inconsistent with the testimony … on infringement"), and that counsel had been involved in "a pattern" of "manipulating testing" and "selectively providing limited work product information" to Dr. Soares.  (*Id.* ¶¶ 18, 128, 133.)  But despite the fact that it was charging experienced, respected attorneys with serious wrongdoing, Nova did not allege a single supporting fact. Instead, Nova's allegations against Dow's counsel rested only "on information and belief" (*id.* ¶¶ 127, 128, 130, 133, 140)—and Nova never explained the supposed "information" on which its

"beliefs" were founded.  What is more, Nova's allegations appeared to be based on improper adverse inferences drawn from Dow's pre-litigation work product testing, which this Court found protected by the work-product doctrine.  (*See id.* ¶¶ 127-133.)

Nova's amended complaint also leveled new allegations against Dow and its counsel on standing.  According to Nova, Dow intentionally omitted to produce the Contribution Agreement in discovery until June 19, 2009, and ultimately did so only after "detach[ing] from the text of the agreement the schedules relating to the patents included in and excluded from the transfer." (*Id.* ¶¶ 55, 58.)  But Nova knew that the trial record contains every existing version of the schedules, including the original 2002 schedules—which were blank, with the intention that they would be filled in later. (*See* D.I. 18 at 7 n. 4, Ex. 2 at DN00153885-88.)  Further, the amended complaint alleged, as Nova did in the 05-737 Action, that instead of producing the original schedules with the Agreement, "Dow counsel created newly altered schedules" showing that the patents-in-suit were transferred, and then "produced the 2002 Contribution Agreement with these newly fabricated schedules without … identifying them as having been recently created by counsel."  (D.I. 11 ¶ 59; *see also id.* ¶¶ 60-65.)[1]  Astoundingly, Nova alleged that Dow had "fabricated" and "altered" the Schedule A in 2009 (*id.* ¶¶ 59, 60, 63, 65)—suggesting that Dow had tried to deceive Nova and the Court, despite Dow's explanation, on July 2, 2009 (less than 2 weeks after production, and nearly a year before trial) that the document in question had been created in 2009.  (Ex. 1; *see also* D.I. 16 at 17 n. 8.)

Nova also again cited Valenzuela's testimony, arguing that it established that the Contribution Agreement effectuated a "mass transfer" of all of Dow's patents to DGTI, and that

---

[1]      In 2009, Dow prepared (i) a Schedule A specifying that all of Dow's patents had been transferred to DGTI, ***except*** for patents listed on a separate Schedule D, and (ii) a Schedule D listing the patents-in-suit as excluded from the transfer.  (D.I. 18 at 7 n. 4, Exs. 2-4.)

Dow thus had misrepresented the effect of the Agreement.  (D.I. 11 ¶¶ 79-91.)  In addition, Nova asserted that Valenzuela's testimony was "irreconcilable" with Dow's argument in the prior case that the "Schedule B Supplement" was the Schedule A referenced in the Agreement.  (*Id.* ¶ 92.)  And Nova argued that documents produced in the Canadian litigation further corroborated its theory.  (*Id.* ¶¶ 72-76, 96-101.)  But Nova again ignored that all this extrinsic evidence was irrelevant in light of the fact that the Contribution Agreement is unambiguous.

### D.       Dow's Second Motion To Dismiss

Dow again moved to dismiss, arguing that Nova had no basis to allege that Dow's attorneys were involved in any wrongdoing, that Dow's purportedly perjured testimony and misleading arguments were not false, and that the issues to which they related did not affect the result of the 05-737 Action.  (*See* D.I. 16.)  Dow noted that Nova had no basis to allege that Dow's counsel should have known that it was "perhaps impossible" to separate the HDF, particularly in view of the trial record showing that Nova *itself* had successfully separated the HDF more than 40 times.  (*Id.* at 11, 23-24.)  Dow also explained that Nova's attempt to obtain an adverse inference regarding counsel's knowledge from certain attorneys' involvement in work-product testing was legally unsupportable.  (*Id.* at 11-12.)  In response to Nova's argument that its standing evidence bore on the question whether the "Schedule B Supplement" was an authentic Schedule A, Dow explained that the evidence was irrelevant:   The Contribution Agreement unambiguously does not transfer any patent not listed on a Schedule A, and no Schedule A has ever listed the patents-in-suit.  (*Id.* at 16-18.)  Dow also pointed out that it had produced the original Contribution Agreement, together with the original, blank schedules, as well as all existing subsequent schedules.  (*Id.* at 16-17.)  And Dow explained that many of Nova's contentions had been rejected in the 05-737 Action.  (*Id.* at 13-15 & nn.2-6.)

Rather than address the substance of the amended complaint's allegations, Nova's

answering brief sought to convince the Court that it should ignore the trial record in the 05-737 Action, even where it flatly contradicted Nova's allegations.  (*See* D.I. 18, at 2-3, 23-25.)  Nova did not respond to Dow's explanation that there was no basis to accuse Dow's trial counsel of fraud on the Court in connection with Dr. Soares, nor did Nova respond to Dow's argument that the Court could not properly draw an adverse inference regarding counsel's knowledge from certain attorneys' involvement in work-product testing.  And Nova never explained how it could be plausible that Dr. Soares and Dow's counsel could believe that separating the HDF was "impossible" when Nova conducted over 40 successful separations.

With respect to standing, Nova persisted in arguing that Valenzuela's testimony impacted the construction of the Contribution Agreement, consistent with its "mass transfer" interpretation.  (*Id.* at 4-5, 9-10, 13-14, 16-17, 18-19.)  Nova also argued that the testimony "shows Dow fraudulently induced the court to find 'Schedule B Supplement' was 'Schedule A.'" (*Id.*)  Nova repeated its contention that the schedules Dow produced in June 2009 had been "fabricated," asserting that "both these Schedules were altered to favor of Dow's position in June, 2009, just prior to their production to Nova" (*id.* at 7 n.4, 8)—but Nova did not acknowledge that Dow never asserted that the June 2009 schedules were effective in 2005 when the lawsuit was filed. *See supra*, at 6.

### E.     Nova's Bad Faith Arguments At The July 29, 2014 Hearing

At the July 29, 2014 hearing, Nova again initially sought to restrict the Court to the amended complaint, insisting that the Court could not rely on the prior trial record or any events in the Canadian and Louisiana proceedings to refute Nova's bare allegations of fraud, even where the record was clearly inconsistent with Nova's allegations.  (*See* D.I. 28, at 29:11-19.)  Counsel then all but disavowed the amended complaint's allegations that Dr. Soares had testified so falsely as to rise to the level of fraud, falling back to the "suggest[ion]" that "his testimony in

one [case] was inconsistent with his testimony in the other." (*Id.* at 38: 2-4; *see also id.* at 39:1-5 ("I'm not sure I want to get into a perjury discussion.  But … he made statements we say were knowingly inconsistent, one with the other.  And *if that is the definition of perjury*, then that is perjury.") (emphasis added).)  With respect to Nova's contention that Dow's counsel had been involved in a fraud on the court, Nova's attorney simply reasserted the allegation that "Dow's trial counsel was involved because they directed the testing of Nova's product and provided work product to Dr. Soares" (*id.* at 40:8-10)—without identifying any evidence that the work product had anything to do with the separation issue or that it was provided to Dr. Soares, and without even acknowledging Dow's repeated explanations that the Court could not permissibly draw an adverse inference from properly withheld work-product-protected documents.

But although Nova's oral argument merely repeated its prior arguments on infringement, Nova's counsel completely changed Nova's theory as to standing—announcing that Nova was no longer "challenging the interpretation of the Contribution Agreement" (*id.* at 34:11-12) and agreeing that the patents-in-suit were transferred if and only if they appeared on an operative Schedule A (*id.* at 26:7-10).   Instead, Nova's counsel now referred the Court to the Schedule A that Dow had created in 2009, which provided that all of Dow's patents had been transferred to DGTI *except* for those identified on Schedule D.  (*Id.* at 49:8-11; *see also id.* at 26:10-15.)

Clearly skeptical that the Schedule A identified by Nova's counsel controlled ownership when the lawsuit was filed in 2005, the Court confronted Nova's counsel regarding Nova's prior allegations that the Schedule A that Nova's counsel relied on was created in 2009, only to be met with evasive answers:

> THE COURT:  Is the Schedule A you are showing me today, was it created in 2009?
>
> [NOVA'S COUNSEL]:  It is undated, Your Honor.

> THE COURT:  Do you allege in the pleading before me that it was created in 2009?
>
> [NOVA'S COUNSEL]:  I don't know that we do.
>
> THE COURT:  Is what was shown to us with the pleading that it was created in 2009 an inaccurate recitation of your pleading?
>
> [NOVA'S COUNSEL]:  Your Honor, I don't know.  I don't know the answer to that.  I know it was given to us….

(*Id.* at 49:15-25.)  It was of course clear that the document in question had been created in 2009 (a fact that was fatal to the newly presented standing argument):  Dow had disclosed that fact *in 2009* (*see* Ex. 1), and Nova relied on this fact throughout the litigation—*including in the amended complaint in this case*.  (*See* D.I. 11 ¶¶ 65, 67.)  In addition, Nova's counsel wrongly told the Court that this argument had been presented in the amended complaint:

> THE COURT:  Is the Schedule A that you have shown me today and the Schedule D, is that an argument that is in your briefs?
>
> [NOVA'S COUNSEL]:  It's in the amended complaint. Is it in our brief?
>
> THE COURT:  The briefs on the motion that we're arguing today.
>
> [NOVA'S COUNSEL]:  I believe it is.  It certainly is in the amended complaint, Your Honor.

(D.I. 28 at 50:25-51:8.)  But in fact the amended complaint *contradicts* counsel's new argument, as shown by Nova's allegation that "Dow had to admit that the Schedule A it had created in 2009 was not the Schedule A that had existed at the time the Delaware Case was filed." (D.I. 11 ¶ 67.) Yet even after it was clear that Nova had no leg to stand on, Nova's counsel declined to confess error and withdraw its pleading.  Instead, Nova's counsel sought to keep its claims alive at any cost, even if that meant evading the Court's questions and feigning ignorance.  This conduct demonstrates Nova's willingness to say anything at all, no matter how false or absurd, to pursue its baseless litigation.

### F.      The Court's Dismissal Of Nova's Action

After Nova demonstrated, both in writing and at argument, that it was wholly unable to allege facts to support a plausible claim for equitable relief under the exacting standard in *Beggerly*, the Court granted Dow's motion to dismiss.  (D.I. 28 at 56:20-21.)   The Court concluded that "Nova's allegations are not plausible" (*id.* at 52:1-2), and specifically that Nova had "not adequately alleged and will be unable to prove an intentional fraud."  (*Id.* at 54:5-6.) Moreover, "Nova has not adequately alleged and will be unable to prove the involvement in that intentional fraud by an Officer of the Court."  (*Id.* at 54:7-9.)  Thus, "[t]here is fundamentally no adequate allegation of the grave miscarriage of justice that is required under the extraordinary circumstances of a Rule 60 independent action after the final judgment."   (*Id.* at 54:10-13.)

As to standing, the Court observed that because the Contribution Agreement is unambiguous, "Nova's new evidence is immaterial and irrelevant" (*id.* at 55:10-11), and that in any event Valenzuela's testimony in the tax case "has nothing to do with the authenticity of Schedule A" (*id.* at 55:12-15).  With respect to Nova's argument on infringement, the Court concluded that "Nova has identified nothing more than arguably inconsistent statements by … Dr. Soares…. [E]ven perjury is likely not enough to [establish a] grave miscarriage of justice, … [and] Nova has not even plausibly alleged perjury."  (*Id*. at 56:5-13.)  The Court also found that Dr. Soares' "purported inconsistency" did not "go[] to any fact that was materially disputed in the [05-737 Action]."  (*Id*. at 56:13-15.)

## **ARGUMENT**

This case never should have been filed.  Sanctions are necessary both to compensate Dow for the time and expense it has been forced to put into responding to Nova's frivolous claims, and as a deterrent to attempts by future parties and their attorneys to obtain endless relitigation without regard for the orderly administration of justice.   Indeed, sanctions are particularly

appropriate here in view of Nova's and its counsel's baseless allegations of misconduct by respected officers of this Court.  *See, e.g.*, *Cleveland*, 827 F.2d at 987 (ordering sanctions for baseless allegations of attorney misconduct because a "complaint of this nature has a potentially devastating impact upon professional reputations").

In order to achieve the goals of compensation and deterrence, the Court should order Nova and its counsel to pay all of Dow's costs and attorneys' fees in this action, on any or all of three separate but overlapping grounds.[2]  *First*, Nova's attorneys should be ordered to pay Dow's costs, expenses, and attorneys' fees under 28 U.S.C. § 1927, as a sanction for vexatiously, and in bad faith, multiplying the proceedings (and associated expenses) connected with Dow's patent-infringement suit by filing and maintaining this frivolous lawsuit.  *Second*, Nova should be ordered to pay Dow's fees under 35 U.S.C. § 285, because this case—the satellite of an ongoing patent litigation—is an "exceptional" one in which Dow ought not be made to bear the costs of Nova's unreasonable litigation tactics.  *Third*, if there were any doubt as to whether §§ 1927 and 285 are applicable here, the Court should award sanctions under its inherent authority to police and deter oppressive and bad-faith litigation misconduct.

Regardless of the source of authority, Dow should be awarded, not only the fees and expenses incurred in defending against Nova's frivolous complaints, but also Dow's fees and expenses connected with the instant motion.  *See, e.g.*, *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 387-88 & n.21 (3d Cir. 1997) (sanctions properly include costs of sanctions proceedings); *Gilbreth Int'l Corp. v. Lionel Leisure, Inc.*, 622 F. Supp. 478, 483 (E.D. Pa. 1985),

---

[2]      Dow has not moved for sanctions under Rule 11, because the Amended Complaint has been dismissed, rendering it impossible for Dow to provide the requisite 21 days' notice to allow Nova an opportunity to withdraw or correct the "challenged paper," FED. R. CIV. P. 11(c)(2). However, the Court retains authority to order Nova to show cause why it should not be sanctioned under Rule 11, and to order sanctions if Nova fails to make such a showing.  *See* FED. R. CIV. P. 11(c)(3), 11(c)(5)(B); *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995).

## I.   THE COURT SHOULD ORDER NOVA'S COUNSEL TO PAY DOW'S ATTORNEYS' FEES AND COSTS AS A SANCTION UNDER 28 U.S.C. § 1927

Under § 1927, the Court is empowered to order an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously … to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The Third Circuit has interpreted § 1927 to permit fee awards where "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."  *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002).  Each of the requisites is present here.

### A.   Nova's Counsel Multiplied Proceedings And Increased Dow's Costs

There is no doubt that filing this equity action multiplied proceedings and thereby increased their cost to Dow.  Indeed, counsel's conduct "multiplied proceedings" in the most literal sense, by *generating an entirely new lawsuit* that arises directly out of Dow's already long-running patent-infringement case.  And Nova further multiplied the proceedings when it responded to Dow's motions to dismiss not by withdrawing its meritless complaint, but by filing an amendment and then opposing Dow's second motion on grounds that lacked any basis in law or fact.  The result was to force Dow to pay for briefing on two separate motions to dismiss, and for its lawyers to prepare for and attend a hearing on the motion to dismiss.  Such multiplication through meritless requests for post-judgment relief provides ample ground for § 1927 sanctions.  *See, e.g.*, *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 146 (2d Cir. 2012) (affirming § 1927 sanctions as to bad-faith Rule 60(b) motion); *In re Elonex Phase II Power Mgmt. Litig.*, 279 F. Supp. 2d 521, 525 (D. Del. 2003); *In re Kaiser Grp. Int'l, Inc.*, 445 B.R. 361, 369 (Bankr. D. Del. 2011).

The Third Circuit has held that § 1927 does apply to initiation of new cases.  *See Lewis v.*

*Smith*, 480 F. App'x 696, 698 (3d Cir. 2012) (affirming award of sanctions where plaintiff filed "an entirely separate case" related to a prior action); *In re Antonelli*, 2012 WL 280722, *16 (Bankr. D.N.J. Jan. 30, 2012).  Here, Nova's complaints are properly treated as an outgrowth of the 05-737 Action (*i.e.*, the case that Nova sought to extend by reopening the judgment), rather than as a wholly separate matter.  Indeed, this action is the equivalent of a late-filed Rule 60 motion, and the cases cited above make clear that a baseless Rule 60 attack may be sanctioned under § 1927.  Even if the initial complaint itself were not ground enough for § 1927 relief, sanctions would be warranted for the costs Dow incurred as a result of Nova's multiplication of proceedings *in this case* by amending the complaint and contesting the second motion to dismiss, even after Dow had shown the action to be frivolous.

### B.   Nova's Counsel Acted Unreasonably, Vexatiously, And In Willful Bad Faith

Nova's counsel's conduct was unreasonable, vexatious, and in bad faith.  The Third Circuit has not defined "unreasonabl[e] and vexatious[]" conduct apart from conduct undertaken in bad faith, but instead has analyzed the two requirements together.  *See, e.g.*, *Prudential*, 278 F.3d at 188-90; *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985).  "Indications of … bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment."  *Prudential*, 278 F.3d at 188 (citation omitted).  As a whole, the "bad faith" inquiry goes to whether counsel's unreasonable, vexatious conduct was willful, rather than merely the result of a "mistake in professional judgment."  *Baker*, 764 F.2d at 209; *see also id.* at 209-11 (affirming award of fees under § 1927 where counsel willfully and unreasonably breached a stipulated order, without finding that firm otherwise acted for improper purposes).  All the indicia of willful bad faith are present here.

*First*, Nova's claims were meritless—indeed, frivolous in view of the extraordinarily exacting standard for equitable-action relief. As the Court observed in dismissing the complaint, "[t]here is fundamentally no adequate allegation of the grave miscarriage of justice that is required under the extraordinary circumstances of a Rule 60 independent action after the final judgment." (*Id.* at 54:10-13.) Specifically, there was never any plausible allegation of bribery, *see Turner v. Pleasant*, 663 F.3d 770, 777 (5th Cir. 2011), fabricated evidence, *see Beggerly*, 524 U.S. at 47, or attorney-suborned perjury, *see Herring v. United States*, 424 F.3d 384, 389-90 (3d Cir. 2005). Instead, Nova relied on "immaterial and irrelevant" evidence having "nothing to do" with the issues in the prior litigation, and on immaterial testimony that it could not even plausibly allege to have been false (D.I. 28 at 55:10-56:15), ignoring that a mere evidentiary dispute comes nowhere near establishing the grave injustice required for relief in an independent action. Moreover, Nova made no competent allegation that an attorney was involved in any wrongdoing, relying entirely on improper assertion and speculation (*see* D.I. 28 at 54:7-9), and thus failed to approach a plausible claim for relief, *see Herring*, 424 F.3d at 386 (equitable action requires "intentional fraud … *by an officer of the court*") (emphasis added). Particularly given the all-but-insurmountable "cliff-face" that an independent-action plaintiff must scale, *id.*, and the need to prove fraud on the court by "clear, unequivocal and convincing evidence," *id.* at 387, Nova's pleadings never had even the slightest merit.

*Second*, Nova's counsel knew or should have known that its serious allegations of wrongdoing had no legal or factual basis. *Beggerly* and *Herring* settled the law many years before Nova filed its complaint, yet Nova's several law firms drafted pleadings coming nowhere close to meeting the strictures imposed by those controlling cases. Even after Dow had *twice* pointed out the glaring flaws in Nova's theories, Nova's counsel persisted in drawing out the proceedings by filing an answering brief that made no serious attempt to refute them. And at

oral argument, after Dow had *again* explained Nova's failure to state a claim, **Nova's counsel** proceeded to invent an entirely new theory of the standing issue (which counsel must have known to be completely without support (D.I. 28 at 26:12-28:8)), while simultaneously asserting without basis that "Dow's trial counsel was involved [in alleged perjury] because they directed the testing of Nova's product and provided work product to Dr. Soares" (*id*. at 40:8-10).

*Third*, the record shows that Nova's counsel willfully prosecuted this case and thus vexatiously multiplied the proceedings and their cost to Dow, even while knowing that their clients' claims were frivolous.  Counsel repeatedly filed papers and presented arguments that did not seriously defend Nova's request for equitable relief on the merits, but instead sought to keep the case alive by conduct that approached subterfuge.  For instance, rather than respond to Dow's repeated explanation that Nova's allegations were baseless, counsel tried to hide behind the Rule 12 pleading standard—asserting that the Court should rest on bare inferences from its pleadings, and should not bother itself with the *facts* established in the 05-737 Action.  (*See* D.I. 18 at 1-3, 17-18.)  Similarly, when confronted with the fact that no evidence supported Nova's allegations of wrongdoing against Dow's counsel in connection with Dr. Soares, Nova's attorneys flatly ignored it: their brief presented no rebuttal, and counsel simply repeated the bald accusation at argument.  *See supra*, at 7-9.

Nova's conduct at the hearing confirms its bad faith.  In its complaint, Nova alleged that Valenzuela's testimony was relevant to the interpretation of the Contribution Agreement and whether the agreement effectuated a mass transfer.  But Nova's counsel jettisoned this argument at the hearing, turning instead to a patently false theory that the June 2009 Schedule A, which everyone agreed was made in 2009, was in fact the operative Schedule A in 2005.  (D.I. 28 at 26:12-16.)  When the Court questioned Nova's counsel on the document's creation date, Nova's counsel evaded the question (*id*. at 49:15-25), despite knowing full well *from Nova's own*

*amended complaint* that the schedule had been created in 2009, rendering it immaterial (*see, e.g.*, D.I. 11 ¶¶ 63-65, 67).  Nova's counsel compounded the problem by falsely telling the Court that its new argument was in the amended complaint (D.I. 28, at 50:25-51:8), when in fact the amended complaint and Nova's opposition brief both ***contradict*** the argument (*see* D.I. 11 ¶ 67 ("Dow had to admit that the Schedule A it had created in 2009 was not the Schedule A that had existed at the time the Delaware Case was filed"); D.I. 18 at 7 n. 4.)

All this adds up to the conclusion that Nova's counsel's entire litigation strategy was an act of willful bad faith.  Nova's sophisticated attorneys must have known that undoing the prior judgment was an impossibility, yet they tried to convince the Court to allow the case to proceed to discovery, where Dow's expenses would quickly mount—impairing the real value of the judgment Dow would be forced to defend against claims Nova's counsel knew to be meritless. Those mounting costs would have given Nova a significant leverage point in negotiations to settle the parties' ongoing, multi-front patent litigation.

## II.     THE COURT SHOULD ORDER NOVA TO PAY DOW'S ATTORNEYS' FEES UNDER 35 U.S.C. § 285

The Court should also order Nova to pay Dow's attorneys' fees in this action under 35 U.S.C. § 285.  Long-settled Federal Circuit precedent holds that § 285 authorizes an award of attorneys' fees in a nominally "nonpatent" case where the "nonpatent" issues are "intertwined with the patent issues" in the sense that "the rights at issue … properly invoke the patent laws." *Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994) (affirming award under § 285 incurred in proceedings to enforce agreement to settle prior patent claims) (citations omitted); *see also Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 n.2 (Fed. Cir. 1989) (affirming award under § 285 in antitrust case "based on alleged inequitable conduct in the PTO").  This standard is plainly met here:  Nova invoked this Court's "ancillary"

jurisdiction to decide a matter arising out of a patent-infringement case (D.I. 11 ¶¶ 5, 8), and sought to undo this Court's patent infringement ruling.   Thus, Nova's case is not merely "intertwined" with Dow's patent claims: it is a component of the Court's adjudication of those claims.   Indeed, if Nova had timely filed a Rule 60(b) motion, forcing Dow to defend its judgment within the same action, there is no doubt that the Court would be empowered to award Dow its attorneys' fees under § 285.  *See, e.g.*, *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 249 (6th Cir. 1979) (affirming award of § 285 "attorneys' fees incurred in opposing [adversary's] Rule 60 motion"); *TruePosition Inc. v. Andrew Corp.*, 2009 WL 1651042, at *1 (D. Del. June 10, 2009) (similar), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (per curiam).  Nova cannot avoid that conclusion through the formalism of a nominally separate action in equity.

Nor is there any doubt that this case is "exceptional" under § 285.  As the Supreme Court recently explained, an "exceptional case" "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  The "totality of the circumstances" inquiry also permits the Court to consider "the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.*  at 1756 & n.6.  That a case is "exceptional" need only be established by a preponderance of the evidence.  *Id.* at 1758.[3]

---

[3]      Although bad faith *suffices* to satisfy the "exceptional case" requirement, it is not a prerequisite.  Rather, unreasonable litigation conduct, including filing and prosecuting baseless claims, suffices to make a case "exceptional."  *See, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703, *9-15 (N.D. Cal. Aug. 12, 2014) (patent case found "exceptional" where plaintiff asserted baseless claims and litigated the case "in an unreasonable manner," including by "engaging in conduct that at times amounted to gamesmanship"); *Classen Immunotherapies, Inc. v. Biogen Idec*, 2014 WL 2069653, at *4 (D. Md. May 14, 2014) (patent case found "exceptional" because "no reasonable litigant could reasonably expect success on the merits" of plaintiff's claims); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 2014 WL 2440867, at *5-7 (S.D.N.Y. May 30, 2014) (similar).

As shown in Point I, *supra*, the facts of this case comfortably satisfy this standard.  *First*, Nova's claims have so little "substantive strength," "considering both the governing law and the facts of the case," *id.* at 1756, as to be considered frivolous.  As the Court found, not only are "Nova's allegations … not plausible," they fall so far short of the standard for maintaining suit that there is no "reasonable expectation that discovery will reveal evidence to support" them.  D.I. 28, at 52:1-4.  Indeed, "[t]here is fundamentally no adequate allegation of the grave miscarriage of justice that is required under … [an] independent action after the final judgment" (*id.* at 54:7-13), and the new evidence on which Nova's claims rested was "immaterial and irrelevant" to any issue in the 05-737 Action (*id.* at 55:10-11).  No reasonable litigant could have expected Nova's claims to succeed.

*Second*, Nova's litigation strategy went far beyond the merely "unreasonable."  Rather than accept the consequences of the final judgment, Nova launched an entirely new action that lacked any basis.  When Dow's first motion to dismiss demonstrated that Nova's claims could not succeed, Nova filed an equally frivolous amended pleading that accused Dow's attorneys of conspiring to commit a fraud on the Court—besmirching counsel's reputations and potentially putting their careers at risk.  And when Dow explained that the amended complaint *also* had no basis, Nova persisted in taking positions that could not be squared with the record in the 05-737 Action.  But rather than acknowledge reality, Nova continued to press meritless claims.

*Third*, an award of fees is appropriate in this case to deter scurrilous accusations of fraud and future misuse of the independent equitable action, as well as to compensate Dow for the expense it has been forced to incur in responding to Nova's meritless claims.  As the Court noted in dismissing Nova's case, "the allegations here [were] just about as serious [as] allegations in civil litigation can be."  (*Id.* at 53:5-12.)  Yet despite the seriousness of those allegations, Nova had so little to back up its claims that this Court did not hesitate to dismiss them.  Dow should

not be made to bear the expenses it has been forced to incur as a result of Nova's misconduct.

### III. THE COURT SHOULD INVOKE ITS INHERENT AUTHORITY TO SANCTION NOVA AND ITS COUNSEL FOR THEIR LITIGATION MISCONDUCT

To the extent the Court concludes that an award of fees would not be appropriate under one of the explicit grants of authority discussed above (including Rule 11, *see supra* footnote 2), it retains authority to "fill in the interstices" by sanctioning Nova and its attorneys under its own inherent authority to regulate the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Attorneys' fees are appropriately ordered under the inherent authority in order both to "vindicat[e] judicial authority" and to "mak[e] the prevailing party whole for expenses caused by" an opponent's bad faith, vexatious, or oppressive conduct. *Id.* at 46; *see also, Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011); *Prudential*, 278 F.3d at 181. As with the other sources of authority, the inherent power is properly invoked to impose sanctions for misconduct associated with a bad-faith Rule 60 filing. *See, e.g.*, *Enmon*, 675 F.3d at 146; *Maid of the Mist Corp. v. Alcatraz Media, LLC*, 446 F. App'x 162, 164 (11th Cir. 2011).

For substantially the reasons set forth above, inherent-power sanctions are appropriate on the facts of this case. The bad-faith conduct of Nova and its counsel has given rise to vexatious, duplicative, wasteful litigation and has forced Dow to expend substantial resources in responding to meritless and indeed frivolous pleadings. Such conduct should be deterred, and Dow should be made whole for the expenses caused by Nova's litigation misconduct.

### CONCLUSION

The Court should hold Nova and its counsel jointly and severally liable for Dow's legal fees and expenses incurred in the course of this action, under 28 U.S.C. § 1927, 35 U.S.C. § 285, and/or its inherent authority. Alternatively, the Court should order Nova and its counsel to show cause why they should not be sanctioned under Fed. R. Civ. P. 11(c)(3).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com

OF COUNSEL:

Anton R. Valukas
Harry J. Roper
Aaron A. Barlow
Paul D. Margolis
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant*
*The  Dow Chemical Company*

Kathleen M. Sullivan
Raymond N. Nimrod
William B. Adams
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010

September 5, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 5, 2014, upon the following in the manner indicated:

Richard L. Horwitz, Esquire                                    *VIA ELECTRONIC MAIL*
David E. Moore, Esquire
Bindu A. Palapura, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951
*Attorneys for Plaintiff*

Louis J. Freeh, Esquire                                        *VIA ELECTRONIC MAIL*
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
*Attorneys for Plaintiff*

Raymond A. Miller, Esquire                                     *VIA ELECTRONIC MAIL*
PEPPER HAMILTON LLP
500 Grant Street
Pittsburgh, PA 15219-2507
*Attorneys for Plaintiff*

Ford F. Farabow, Jr., Esquire                                  *VIA ELECTRONIC MAIL*
Darrel C. Karl, Esquire
Ronald A. Bleeker, Esquire
Mark J. Feldstein, Esquire
Donald R. Dunner, Esquire
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
*Attorneys for Plaintiff*

H. Woodruff Turner, Esquire                                    *VIA ELECTRONIC MAIL*
Thomas A. Donovan, Esquire
Thomas J. Smith, Esquire
Cody Corliss, Esquire
David I. Kelch, Esquire
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, PA 15222-2613
*Attorneys for Plaintiff*


                                          */s/ Rodger D. Smith II*

                                          _____
                                          Rodger D. Smith II (#3778)